**Jason LYNOTT, Petitioner–Appellant,**

**v.**

**Bill STORY, Warden; Federal Correctional Institution, Ashland, Kentucky; et al., Respondents–Appellees.**

No. 89–6550.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 15, 1990.

Decided March 26, 1991.

Commission ("the Commission") deprived him of a fair and constitutionally adequate parole revocation hearing.[1] For the reasons stated below, the district court's order denying Lynott's petition for a writ of habeas corpus is affirmed.

## I.

In 1979, petitioner was paroled from a twenty-six (26) year sentence which was imposed in 1973. Petitioner's parole was revoked in 1981, after violating the terms of his release. Petitioner was granted parole for a second time later in 1981. After violating the terms of his second release, petitioner's parole was again revoked in 1983. Petitioner was granted parole for the third time on October 8, 1986. Thereafter, by letter dated June 4, 1987, the Commission was informed that petitioner had been arrested on charges of violation of the Georgia Controlled Substances Act and felony theft by deception. As a result of these charges, the Commission issued a warrant charging petitioner with violation of the conditions of his release. After petitioner was indicted by the State of Georgia on both charges, the parole violation warrant was executed and, on October 21, 1987, petitioner was again taken into federal custody.

At a preliminary interview on November 4, 1987, petitioner denied both charges against him. In a letter dated December 3, 1987, petitioner requested that he be permitted to retain a stenographer for his revocation hearing, a request which was ultimately denied pursuant to Commission Guidelines. By letters dated January 20 and 21, 1988, the Commission informed petitioner that it would not subpoena favorable witnesses, as was requested by petitioner, without a showing of good cause as required under the Commission Guidelines.

After the Commission granted four separate requests for a continuance, petitioner's hearing was held in Atlanta, Georgia on June 14, 1988. On the advice of his attor-

Lee W. Rowland, Michael T. Palermo (argued), Lexington, Ky., for petitioner-appellant.

Louis DeFalaise, U.S. Atty., Lawrence R. Carmichael, Asst. U.S. Atty., Office of the U.S. Atty., Lexington, Ky., Richard K. Preston, II (argued), U.S. Parole Com'n, Chevy Chase, Md., for respondents-appellees.

Before KRUPANSKY, GUY and SUHRHEINRICH, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

This is an appeal by a federal prisoner, Jason Lynott, from the district court's judgment dismissing his petition for a writ of habeas corpus, filed under 28 U.S.C. § 2241, alleging that the Parole

---

1. In cases involving habeas relief, the scope of appellate review from decisions of the Parole Commission are limited to constitutional or other legal challenges. *Farkas v. United States,* 744 F.2d 37, 38–39 (6th Cir.1984).

ney, petitioner asserted his fifth amendment right not to testify at the revocation hearing, except to the extent of denying the charges against him. No favorable witnesses were called by petitioner to testify on his behalf. Two adverse witnesses testified against petitioner concerning the criminal charges brought against him and each witness was offered for cross-examination. After considering the evidence and testimony presented at the revocation hearing, the Commission revoked petitioner's parole on July 6, 1988.

On December 20, 1988, the Commission's decision to revoke petitioner's parole was affirmed by the National Appeals Board, under 28 C.F.R. § 2.26. Thereafter, Lynott filed a petition for a writ of habeas corpus, under 28 U.S.C. § 2241, alleging constitutional infirmities in his parole revocation proceedings. Lynott's petition was denied by the district court upon *de novo* review of the magistrate's report and recommendation to deny the petition. At the same time, the district court denied Lynott's request for production of documents which would have allegedly shown "bias" in the handling of his case by the Parole Commission.

Lynott appeals the district court's denial of his petition for habeas corpus and the district court's denial of his discovery request. Specifically, Lynott raises three main arguments. First, Lynott contends that his fifth amendment right against self-incrimination was violated because his parole revocation was conducted prior to the trial of criminal charges against him without the benefit of "use" immunity for his testimony. Second, Lynott argues that he was denied his sixth amendment right to effective assistance of counsel at his parole revocation hearing. Third, Lynott argues that the district court's denial of his request for production of documents from the Commission denied him of due process of the law under the fourteenth amendment.

## II.

### A. Fifth Amendment Claim

■ Under certain circumstances, testimony is considered "compelled" when a person is subjected to a penalty as a result of invoking his fifth amendment privilege not to testify. *See Lefkowitz v. Cunningham,* 431 U.S. 801, 805–06, 97 S.Ct. 2132, 2135–36, 53 L.Ed.2d 1 (1977). Petitioner argues that he was penalized for invoking his fifth amendment right not to testify because, in the absence of "use" immunity for his testimony, he was unable to defend against the revocation charges without risking the possibility that his statements would be used against him in the later criminal proceeding. We disagree, finding that a parolee's fifth amendment rights are not violated unless "certain non-criminal sanctions" are imposed on the parolee as a direct result of his refusal to testify.

■ It is well settled that a court is not constitutionally bound to postpone a probation revocation hearing pending conclusion of a federal or state criminal proceeding upon which parole revocation is sought. *United States v. Rilliet,* 595 F.2d 1138, 1140 (9th Cir.1979); *United States v. Brugger,* 549 F.2d 2, 4–5 (7th Cir.), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2186, 53 L.Ed.2d 231 (1977); *Flint v. Mullen,* 499 F.2d 100, 103–04 (1st Cir.), *cert. denied,* 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974); *United States v. Markovich,* 348 F.2d 238, 240 (2d Cir.1965). However, there is a split of authority as to whether the fifth amendment requires that "use" immunity be afforded to a parolee who faces a revocation hearing prior to the resolution of the criminal charges against him.

In *Melson v. Sard,* 402 F.2d 653 (D.C.Cir. 1968), the District of Columbia Circuit held that, under the fifth amendment, use immunity must be afforded to a person who is confronted with a parole revocation hearing prior to the resolution of the criminal charges against him. In requiring use immunity as a matter of constitutional law, the court noted:

> If a parolee is not given the full and free ability to testify in his own behalf and present his case against revocation, his right to a hearing before the Board would be meaningless. Furthermore, his

Fifth Amendment rights must not be conditioned "by the exaction of a price." *Melson*, 402 F.2d at 655 (citing *Garrity v. State of New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967)). The court repeatedly emphasized that a parolee must be allowed to testify freely if confronted by a parole revocation hearing conducted prior to the criminal charges underlying the revocation charge. *Melson*, 402 F.2d at 655.

On nearly identical facts as those in *Melson*, the First and Ninth Circuits have held that no fifth amendment rights are implicated, reasoning that since there is no element of "compulsion" in the revocation proceeding, use immunity need not be afforded to the parolee. *Ryan v. Montana*, 580 F.2d 988 (9th Cir.1978), *cert. denied*, 440 U.S. 977, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979); *Flint v. Mullen*, 499 F.2d 100 (1st Cir.) (per curiam), *cert. denied*, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974). The Ninth Circuit in *Ryan* rejected the *Melson* analysis outright, noting that the privilege not to testify always involves some negative consequences. *Ryan*, 580 F.2d at 991. Relying on Supreme Court cases not mentioned in *Melson* or decided thereafter, the Ninth Circuit concluded that the "price" imposed for invoking the privilege not to testify must amount to "certain non-criminal sanctions" in order to implicate the fifth amendment. *Ryan*, 580 F.2d at 990–91 (relying on *Lefkowitz v. Cunningham*, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977) (immunity must be afforded only in cases in which the "refusal to waive the Fifth Amendment privilege leads automatically and without more to imposition of sanctions.")). *See also Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968) (fifth amendment was violated when policeman was discharged from the police force for failure to waive privilege against self-incrimination before grand jury); *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (fifth amendment was violated when statements were coerced under threat of discharge from police force for refusal to answer); *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (plurality opinion of four justices) (fifth amend-ment was violated when lawyer was disbarred as a result of his refusal to produce documents protected by the attorney-client privilege). In concluding that "certain non-criminal sanctions" were not imposed on a parolee who faced a revocation hearing prior to a trial on the criminal charges alleged against him, the *Ryan* court stated:

> No sanction followed automatically from [the parolee's] exercise of the privilege to remain silent. Rather, the absence of exculpatory information which [the parolee] might have furnished if he had decided to testify "was only one of a number of factors" which might figure in the probation revocation and sentencing determinations.

*Ryan*, 580 F.2d at 990–91. The court also emphasized that immunity was not necessary to protect the fifth amendment rights of a parolee in this situation.

> [A]s previously stated, our rule forbidding use of the parole or probation system as a subterfuge for a criminal investigation, *United States v. Consuelo–Gonzalez*, 521 F.2d 259 (9th Cir.1975), eliminates the possibility that the probation revocation and sentencing hearing might be used as a device to coerce discovery. This safeguard blunts any disadvantages associated with the decision to testify in the probation proceeding.

*Ryan*, 580 F.2d at 993.

We agree with the Ninth Circuit's decision in *Ryan* that, under the Supreme Court's decisions in *Lefkowitz, Gardner, Garrity,* and *Spevack,* "certain non-criminal sanctions" must be imposed as a direct consequence of invoking the privilege not to testify, in order for a fifth amendment violation to occur. As in *Ryan*, petitioner's parole in this case was not revoked because he incidentally invoked his right not to testify but, instead, because the evidence presented at the hearing sufficiently established that he had violated the terms of his parole. Two witnesses testified against the petitioner at the hearing and the police report and state indictment were offered to support the allegations made against him. Petitioner had the right to cross-examine adverse witnesses, to call favorable wit-

nesses or to otherwise present evidence in his defense. The fact that petitioner failed to offer such exculpatory evidence and failed to call favorable witnesses to testify on his behalf, thereby arguably increasing the impact of his failure to testify, does not enhance his fifth amendment claim.

### B. Sixth Amendment Claim

■ Petitioner next argues that he was denied his sixth amendment right to effective assistance of counsel because he was prevented from having meaningful contact with his attorney prior to the parole revocation hearing and, further, because his attorney failed to call favorable witnesses in his defense. Upon a review of the record, we find petitioner's arguments without merit.

In order to succeed on his sixth amendment claim, petitioner must establish that: (1) his counsel's performance was constitutionally deficient; and (2) the prejudice resulting from his counsel's errors deprived him of a fair hearing. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Smith v. Jago*, 888 F.2d 399, 404 (6th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2572, 109 L.Ed.2d 754 (1990). In order to prove the element of prejudice, petitioner must show that had it not been for his counsel's unprofessional errors, the result of the proceeding would have been different. *Young v. Miller*, 883 F.2d 1276, 1280 (6th Cir.1989) (relying on *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068).

Petitioner argues that the Parole Commission intentionally had him transferred between various prisons so as to diminish contact between himself and his attorney. Even if we assume *arguendo* that the Parole Commission impaired meaningful attorney-client contact, however, petitioner has failed to establish that the allegedly impaired attorney-client contact prejudiced the outcome of his parole revocation hearing. Petitioner has not specifically identified any exculpatory evidence which would have been offered had more extensive attorney-client contact occurred. Furthermore, petitioner has failed to establish that any such evidence would have affected the Parole Commission's decision to revoke his parole.

Petitioner next argues that his attorney was deficient in failing to call "favorable witnesses" at his revocation hearing. However, petitioner has not alleged the identity of such witnesses nor has he made any showing that their testimony would have affected the Parole Commission's decision to revoke his parole. In sum, petitioner's unsupported and conclusory averments are insufficient to sustain his burden of establishing a violation of his sixth amendment right to effective assistance of counsel.

### C. Due Process Claim

■ Petitioner appeals the district court's denial of his request for production of documents from the Commission on the grounds that he was denied due process of the law under the fourteenth amendment. In considering petitioner's argument, we remain aware of the principle that a court must provide discovery in a habeas corpus proceeding only "where *specific allegations* before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore, *entitled to relief....*" *Harris v. Nelson*, 394 U.S. 286, 300, 89 S.Ct. 1082, 1091, 22 L.Ed.2d 281, *reh'g denied*, 394 U.S. 1025, 89 S.Ct. 1623, 23 L.Ed.2d 50 (1969) (emphasis added).

Petitioner sought from the Commission production of complete parole files of twenty-three (23) inmates as well as all documents relating to petitioner's testimony before various federal agencies concerning allegedly improper parole Commission procedures and/or actions taken against himself and other inmates. Petitioner contends that these documents would have shown that case analyst Pat Skaggs, who was responsible for making certain decisions concerning petitioner's parole violation case, had reason to be biased against him. For instance, petitioner complains that Skaggs improperly denied his request to have a stenographer at his revocation hearing. However, the Commission Guidelines specifically and unequivocally precludes any recording devices at such hear-

ings.[2] Petitioner also complains that Skaggs, or someone else at the Commission, refused to subpoena favorable witnesses to appear at his hearing. However, the Commission Guidelines clearly state that petitioner must affirmatively show "good cause" why such witnesses would not voluntarily appear, a requirement which petitioner never attempted to satisfy.[3] It is clear that all of the decisions allegedly made by Skaggs from which Lynott complains were made pursuant to mandatory, not discretionary, written Commission Guidelines.

Even assuming that the documents petitioner requested would have established that Skaggs had a reason to be biased against him, petitioner would still not be entitled to habeas corpus relief from the Commission's decision to revoke his parole. Petitioner has not specifically alleged bias against any of the three officers who participated in the hearing and who recommended that his parole be revoked. Furthermore, none of the documents which petitioner requested in his discovery request bear on the issue of whether he violated the terms of his parole or refute the overwhelming evidence presented against him at the hearing.[4]

AFFIRMED.

2. The Commission Guidelines provide: "Reporter or recorder devices brought in by the alleged violator or his attorney are not permissible. No reproduction of the hearing other than provided by the Commission will be permitted." Commission Guidelines § 2.50–03.

3. The Commission Guidelines provide, in relevant part:
   (a) While the Commission's subpoena power is broad, its use should, except in emergencies, be restricted to adverse witnesses within the district where the proceeding is held, when such persons have refused to attend or are unlikely to attend. A subpoena for a requested adverse witness from outside the district should be issued only when an affidavit in lieu of testimony is insufficient to settle the factual dispute raised by the alleged violator.
   (b) The alleged violator bears a heavy burden to prove that a witness to testify on his behalf will not appear voluntarily or give a written statement without subpoena. The witness should be essential to determining the basic facts in genuine dispute, rather than merely testimonial to mitigating circumstances, which can more conveniently be obtained by letter or affidavit.
   Commission Guidelines § 2.51–04 (emphasis added); see also 28 C.F.R. § 2.51.

4. In addition to his fifth, sixth, and fourteenth amendment claims, petitioner set forth to the district court fifteen (15) other reasons why his revocation proceedings were constitutionally inadequate. To the extent petitioner has attempted to raise these same arguments on appeal, we reject them for the same reasons stated in the magistrate's report and recommendation, which was adopted by the district court on November 29, 1989.