951 F.2d 348
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald J. BEDEN-EL, Petitioner-Appellant,
v.
John PRELESNIK, Respondent-Appellee.
 No. 91-1204.
 United States Court of Appeals, Sixth Circuit.
 Dec. 6, 1991.
 
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges, and ALLEN, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner Ronald Jerome Beden-El appeals the district court's denial of his pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who was convicted of first-degree murder on May 23, 1985, after a jury trial in the Detroit Recorder's Court in Detroit, Michigan, is incarcerated at the Riverside Correctional Facility in Ionia, Michigan.
 
 
 2
 On appeal he raises four issues: (1) whether sufficient evidence existed to convict him of first-degree felony murder in violation of due process under the Fourteenth Amendment, (2) whether failure to suppress his confession to police violates his Fourth Amendment rights, (3) whether the assistance of his trial and appellate counsels was so deficient as to violate his Sixth Amendment right to effective asistance of counsel, and (4) whether the jury instructions were so erroneous as to deny him due process under the Fourteenth Amendment. For the reasons that follow, we affirm.
 
 I.
 A. Procedural History
 
 3
 Petitioner, through appointed counsel, appealed his conviction to the Michigan Court of Appeals. The Court of Appeals considered three issues and affirmed the conviction. People v. Beden, No. 86469 (Sept. 3, 1987). These issues were: (1) sufficiency of the evidence, (2) suppression of petitioner's confession, and (3) ineffective assistance of trial counsel.
 
 
 4
 Subsequently, petitioner, in propria persona, filed a delayed application for leave to appeal in the Michigan Supreme Court. A state appellate defender was appointed to represent petitioner and to file a supplemental brief on the following issues: (1) sufficiency of the evidence, (2) legality of petitioner's arrest, and (3) suppression of petitioner's confession. Appellate counsel filed the requested brief on February 27, 1990, including a challenge to the trial court's jury instructions as well as the requested issues previously stated. On March 7, 1989, in a brief, one-sentence order, the Michigan Supreme Court denied the delayed application for leave to appeal because "we are not persuaded that the questions presented should be reviewed by this court." People v. Beden, No. 81886 (March 7, 1989).
 
 
 5
 On February 27, 1990, petitioner filed a pro se petition for habeas relief under 28 U.S.C. § 2254 in the United States District Court making four challenges to his conviction of first-degree murder. As earlier indicated, the district court denied petitioner's petition. The challenges or issues raised by the petitioner in the district court are the same issues raised in this appeal.
 
 B. Basic Facts
 
 6
 The following evidence was presented at petitioner's trial. Petitioner and the victim, Berry Winrow, along with Carol Adkins-Smith were partners and owners of Mike's Meat Market.
 
 
 7
 Adkins-Smith testified to the following: shortly after Thanksgiving, 1985, the partnership was having difficulties because petitioner would not show up for work, and neither she nor Winrow could get in touch with him. Nevertheless, petitioner was withdrawing money from the business account. No more than $20.00 was retained in the store's cash register, but a briefcase in the back room of the store contained the store's receipts, and petitioner was aware of this fact. On January 15, 1985, Adkins-Smith arrived at the store at 9:30 a.m. and about an hour later, she left the store for approximately ten minutes. As she was getting into her car, she saw Daryl Smith and another man walking towards the store. When she returned, the victim, Berry Winrow, was outside on the ground bleeding. When she went inside the store, she discovered that the briefcase in the back room containing the store's money was missing.
 
 
 8
 Winrow died shortly thereafter of gunshot wounds to the chest and arm. Two witnesses testified at trial that they saw two men enter and leave the store, and that they heard sounds of a struggle inside the store moments before they saw the two men leave. These witnesses were able to identify the two men as Daryl Smith and James Hodge.
 
 
 9
 On January 16, 1985, Detroit police sergeant Elmer Harris interviewed the petitioner. After Harris informed petitioner of his constitutional rights, petitioner told Harris that, "I sent them over there to rough him up, but they weren't supposed to kill him." Petitioner subsequently made a formal statement which was typed and then corrected and signed by petitioner. Both statements were admitted into evidence at trial.
 
 
 10
 In his formal statement, petitioner admitted the following: On January 14, 1985, he spent the night at Daryl Smith's house. In the morning Smith took petitioner to a bus stop, and petitioner rode the bus to the bank where Mike's Meat Market had an account. However, before he went in he saw Winrow and Adkins-Smith pull up and "got scared and nervous" so he left and went downtown. When petitioner arrived downtown, he ran into Daryl Smith. They went to a bar where they sat for a while and played video games. Then Smith made a telephone call to someone named "Calvin" or "Kenny" after which Smith told petitioner he was going to go by and "check out" Mike's Meat Market to "see if they could get any money or anything, to see what was--what was happening."
 
 
 11
 Petitioner's confession further stated that petitioner and Daryl Smith had talked about robbing the store before so that Smith could get "money to get some girls" to dance for Smith. Petitioner had told Smith that Mike's Meat Market handled thousands of dollars, and Smith had said to him that he knew this guy "that loved to do stick-ups." While still at the bar, Smith informed petitioner that he had gone by the store the day before but Winrow was not there, so he had asked co-owner Adkins-Smith about a ham. At about 11:00 a.m., Smith left the bar to pick up another man and go to Mike's Meat Market. Later, when Smith returned to the bar, he said that the other man shot Winrow because "he just kept on fighting them and the guy had to shoot him." Smith told petitioner that the man who shot Winrow wanted $1,000 within 48 hours or "he was going to take me [petitioner] out." He then went with Smith to another man's house to get $450 owed to him in order to pay the man who shot Winrow. At that point the police picked him up.
 
 II.
 
 12
 The preliminary threshold standard by which we review the district court's denial of a writ of habeas corpus is de novo, but complete deference is given to evidence supported state findings of fact. Lundy v. Campbell, 888 F.2d 467, 469 (6th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 2212 (1990).
 
 A. Sufficiency of the Evidence
 
 13
 Petitioner contends that his due process rights under the Fourteenth Amendment were violated because the evidence produced at trial was insufficient to prove that he possessed the requisite mens rea for first-degree murder. The victim of the crime was killed during a robbery of his store. Petitioner was not at the scene of the crime, but the State prosecuted him under an aiding and abetting theory.
 
 
 14
 There is no dispute as to the facts of this case. Rather, petitioner contends that the district court failed to use the proper legal standard in determining that sufficient evidence existed to convict him of felony murder in Michigan. Petitioner does not clearly state in his brief what he believes is the improper legal standard applied by the district court; nevertheless, petitioner correctly asserts that conviction of an accused without "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," is a violation of the accused's due process rights. In re Winship, 397 U.S. 358, 364 (1970).
 
 
 15
 In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court established the standard to be applied in determining whether the evidence in support of a state court conviction is sufficient to satisfy due process. The proper inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt based upon the evidence adduced at trial. Furthermore, this court must consider the evidence in the light most favorable to the prosecution. Jackson, 443 U.S. at 324; see also Spalla v. Foltz, 788 F.2d 400, 402 (6th Cir.), cert. denied, 479 U.S. 935 (1986). Moreover, as the district court correctly stated, evidence will not be considered insufficient simply because it is circumstantial. Foltz, 788 F.2d at 402.
 
 
 16
 In Michigan, murder is judicially defined: "[m]urder is where a person of sound memory and discretion unlawfully kills any reasonable creature in being, in the peace of the state, with malice prepense or aforethought, either express or implied." People v. Aaron, 409 Mich. 672, 299 N.W.2d 304, 319 (1980) (citations omitted). Michigan's felony murder statute under Michigan Compiled Laws § 750.316 provides that "[m]urder which is perpetrated ... or which is committed in the perpetration, or attempt to perpetrate ... robbery ... is murder of the first degree, and shall be punished by imprisonment for life." This statute simply raises the level of a second-degree murder to a first-degree murder. Aaron, 409 Mich. 672, 299 N.W.2d at 322. Under Michigan law, malice is an essential element of any murder including felony murder. Intent to commit the underlying felony does not suffice as malice for murder. Aaron, 409 Mich. 672, 299 N.W.2d at 326; People v. Kelly, 423 Mich. 261, 378 N.W.2d 365, 370 (1985); People v. Flowers, No. 133312, 1991 Wl 168683, at 7, 1991 Mich.App. LEXIS 385, at * 7-8 (Sept. 3, 1991).
 
 
 17
 For purposes of murder, malice is "the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm." Aaron, 409 Mich. 672, 299 N.W.2d at 326; Kelly, 423 Mich. 261, 378 N.W.2d at 370; Flowers, 1991 WL 168683 at 8, 1991 Mich.App. LEXIS 385, at * 9. The facts and circumstances involved in the commission of a felony may provide sufficient evidence to prove malice. Aaron, 299 N.W.2d at 326; Kelly, 423 Mich. 261, 378 N.W.2d at 370; Flowers, 1991 WL 168683, at 8, 1991 Mich.App. LEXIS 385, at * 10.
 
 
 18
 Finally, under Michigan's aiding and abetting statute, Mich.Comp.Laws § 767.39, one who procures, counsels, aids or abets in the commission of an offense is as guilty as the one who directly committed the offense. The mens rea required for conviction of aiding and abetting in a particular offense is the same as that required for the principal of the offense. Kelly, 423 Mich. 261, 378 N.W.2d at 372; see also Flowers, 1991 WL 168683, at 10, 1991 Mich.App. LEXIS 385, at * 12.
 
 
 19
 Based on the evidence, a rational jury could have determined that petitioner intended to have Mike's Meat market robbed and that petitioner aided in the robbery by informing the principals where the store kept its receipts. As to felony-murder, a rational jury could have determined beyond a reasonable doubt that petitioner acted with "wanton and willful disregard" when petitioner aided in the robbery and told the principals to "rough up" the victim. As the district court found, "[p]etitioner set in motion a force that was likely to cause great bodily harm or death."
 
 
 20
 Petitioner argues that in order to find malice for felony murder, the evidence must have shown that he knew of the principals' intent to kill or to cause bodily harm. This contention is incorrect. Knowledge of a principal's intent to kill or cause bodily harm is one means by which "wanton and willful disregard" may be shown, but it is not the only means. See Kelly, 378 N.W.2d at 372; Flowers, 1991 WL 168683, at 10-11, 1991 Mich.App. Lexis 385, at * 12-13.
 
 
 21
 Finally, because in Michigan the killing of another human being with malice during the perpetration of a robbery constitutes first-degree murder, a rational jury could have determined beyond a reasonable doubt that petitioner was guilty of first-degree murder.
 
 B. Petitioner's Confession
 
 22
 Petitioner contends that he was arrested without probable cause, and since the police had no arrest warrant, his confession was illegally obtained. Consequently, the failure to suppress his confession violated his Fourth Amendment rights. The district court properly refused to address the merits of this claim on the basis that Stone v. Powell, 428 U.S. 465, 494 (1976), precludes review of a Fourth Amendment claim in a habeas petition where the petitioner has already had an opportunity for a fair and full litigation of that claim in state court. Petitioner argues that he has not had an opportunity for full and fair litigation of this claim, but his contention appears to be based on the fact that petitioner simply disagrees with the state courts' determination of the merits of his claim.
 
 
 23
 The district court correctly stated the two-prong approach in determining whether petitioner has had an opportunity for a full and fair hearing. First, the court must determine whether the State has a procedural mechanism which presents an opportunity to raise a Fourth Amendment claim. Second, the court must determine whether presentation of that claim was frustrated by a failure of that procedural mechanism. Riley v. Gray, 674 F.2d 522, 526 (6th Cir.1981), cert. denied, 459 U.S. 948 (1982); see also Jennings v. Rees, 800 F.2d 72, 76-77 (6th Cir.1986).
 
 
 24
 On January 29 and 30, 1985, petitioner received a preliminary examination in the Detroit Recorder's Court during which the court heard testimony and considered in depth whether probable cause existed to arrest petitioner, and, consequently, whether petitioner's confession obtained after his arrest should be suppressed. Moreover, before trial, petitioner's trial attorney filed a motion to suppress petitioner's confession and a motion to quash the confession. On April 26, 1985, the court heard arguments on the motion to quash first and subsequently denied the motion. The record indicates that the motions hearing terminated without arguments or an oral ruling on the motion to suppress. Nevertheless, the Michigan Court of Appeals did address at length the legality of the arrest and the alleged tainted nature of the confession, even though the State argued that petitioner abandoned the issue by not addressing it at the motions hearing. Clearly the state provided a procedural mechanism to examine the merits of petitioner's claim, and, in fact, the State considered petitioner's claim fully at least twice. Furthermore, as the district court noted, any failure to address further petitioner's claim is not due to a frustration of the state's procedural mechanism. Where counsel declines to pursue a Fourth Amendment claim, it is no reflection on the state's procedural mechanism. See Jennings, 800 F.2d at 77.
 
 
 25
 C. Ineffective Assistance of Trial and Appellate Counsel
 
 
 26
 The district court noted that petitioner failed to raise his claim of ineffective assistance of counsel before the Michigan Supreme Court. Nevertheless, the district court addressed the merits of the issue on the basis that it would be futile for the petitioner now to attempt to raise the issue before the Michigan Supreme Court. Exhaustion is not a jurisdictional issue, Castille v. Peoples, 489 U.S. 346, 349 (1989), and because the state has not objected to the district court's finding, this court may exercise its discretionary power to go directly to the merits of this issue. See, e.g., Cobb v. Perini, 832 F.2d 342, 345 (6th Cir.1987), cert. denied, 486 U.S. 1024 (1988); Weaver v. Foltz, 888 F.2d 1097, 1100 (6th Cir.1989).
 
 
 27
 Petitioner contends that both his trial and appellate counsels' performances were deficient to the extent that he was denied his Sixth Amendment right to effective assistance of counsel. In order to succeed on this claim, petitioner must pass a two-pronged test: First, he must show that counsels' errors were serious enough to deprive petitioner of a fair trial, and, second, he must show that counsels' errors prejudiced petitioner's defense. Strickland v. Washington, 466 U.S. 668 (1984); Lynott v. Story, 929 F.2d 228, 232 (6th Cir.1991). In order to prove that he has suffered prejudice, petitioner must show that there is a reasonable probability that absent his counsels' errors, the results of the proceedings would have been different. Strickland, 466 U.S. at 694; Lynott, 929 F.2d at 232. A reasonable probability is one which undermines confidence in the outcome of the case. Strickland, 466 U.S. at 694. Additionally, "there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." United States v. Hanley, 906 F.2d 1116, 1121 (6th Cir.) (citing Strickland, 466 U.S. at 689), cert. denied, --- U.S. ----, 111 S.Ct. 357 (1990).
 
 
 28
 Petitioner contends that his trial counsel was constitutionally ineffective in failing to pursue the motion to suppress his confession and in failing to object to the jury instructions. In applying the correct standard as stated above, the district court offered several explanations for trial counsel's failure to pursue the motion to suppress. It is unnecessary to consider the reasonableness of these offered explanations because the Michigan Court of Appeals did address at length the issue of suppressing the confession and held in favor of the State. Therefore, petitioner suffered no prejudice even though trial counsel did not pursue his motion to suppress at the state district court level.
 
 
 29
 As to petitioner's contention that his trial counsel was ineffective because he did not object to the jury instructions, the district court correctly noted that appointed attorneys are not required to raise every colorable claim in order to be constitutionally effective. Jones v. Barnes, 463 U.S. 745, 754 (1983); Bowen v. Foltz, 763 F.2d 191, 194 n. 4 (6th Cir.1985). Experienced advocates "winnow out" the weaker arguments and focus on a few key issues in order to prevent dilution of their stronger claims. Jones, 463 U.S. at 751-52.
 
 
 30
 As to his appellate attorney, petitioner contends that his counsel was ineffective because he did not file a timely appeal to the trial attorney's failure to pursue the motion to suppress and his failure to object to the confession and the jury instructions. The appellate attorney did fail to raise before the Michigan Court of Appeals a challenge to effectiveness of trial counsel upon submission of his original appeal; however, in a supplemental brief, he did raise the issue. The Michigan Court of Appeals subsequently addressed this issue and determined that trial counsel was not ineffective. Furthermore, the appellate attorney did raise before the Court of Appeals the issue of suppression of the confession. Finally, as previously discussed, an appointed attorney is not constitutionally ineffective simply because he does not raise every colorable claim.
 
 D. Jury Instructions
 
 31
 Finally, petitioner challenges the jury instructions given by the trial judge relating to first-degree murder, second-degree murder, armed robbery, and malice. While petitioner did not raise this claim until he filed his application for leave to appeal to the Michigan Supreme Court, the district court nevertheless considered petitioner's challenge to the jury instructions on its merits because of its interpretation of Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038 (1989). The district court relied on the following language from Harris:
 
 
 32
 a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case " 'clearly and expressly' " states that its judgment rests on a state procedural bar.
 
 
 33
 109 S.Ct. at 1043.
 
 
 34
 A federal court will not review a state court decision on a question of federal law where the decision rests on adequate and independent state grounds such as noncompliance with the state's procedural requirements. Coleman v. Thompson, --- U.S. ----, 111 S.Ct. 2546, 2553-54 (1991). Where a state court has denied habeas relief on the basis of a federal question, a federal court may review the merits of the habeas petition. Harris, 489 U.S. 255, 109 S.Ct. at 1043. Because the Michigan Supreme Court denied petitioner's delayed application for leave to appeal without any reference to a procedural default, the district court determined that it could now review the merits of petitioner's claim. However, since the district court has considered the present case, the Supreme Court has clarified when the Harris presumption properly may be applied.
 
 
 35
 In Coleman v. Thompson, --- U.S. ----, 111 S.Ct. 2546, 2557 (1991), the Court held, "[a] predicate to the application of the Harris presumption is that the decision of the last state court to which petitioner presented his federal claims must fairly appear to rest primarily on federal law or to be interwoven with federal law." The Court expressly rejected the rule of "a conclusive presumption of no independent and adequate state grounds in every case in which a state prisoner presented his federal claims to a state court, regardless of whether it fairly appears that the state court addressed those claims." Id. at 2558.
 
 
 36
 In the present case, no state court has addressed the merits of petitioner's challenge to the jury instructions. There exists no basis on which to determine that the Michigan state courts have considered the federal questions presented by petitioner's challenge to the jury instructions. Had the Michigan Court of Appeals addressed the merits of petitioner's challenge to the jury instructions, then this court would look to that decision in determining whether the Harris presumption applied since the Michigan Supreme Court was silent as to its reasons for denying petitioner's leave to appeal. Ylst v. Nunnemaker, --- U.S. ----, 111 S.Ct. 2590, 2594 (1991); McBee v. Abramajtys, 929 F.2d 264, 267 (6th Cir.1991). However, this is not the case, and, according to Michigan law, petitioner did not preserve his appeal as to the jury instructions because he failed to object to them at trial. People v. Kelly, 423 Mich. 261, 378 N.W.2d 365, 369 (1985). Consequently, under Coleman, petitioner's challenge to the jury instructions could be barred due to a procedural default unless he can show cause and prejudice or that a failure to address his claim will result in a "fundamental miscarriage of justice." Harris, 489 U.S. 255, 109 S.Ct. at 1043 (citations omitted).
 
 
 37
 The procedural bar not withstanding, the State has abandoned this argument before this court. The adequate and independent state grounds doctrine as it applies to a habeas corpus petition is not jurisdictional. Coleman, 111 S.Ct. at 2554. It is a matter of comity and federalism, id., and thus this court should not apply it sua sponte. Accordingly, petitioner's challenge to the jury instructions should be addressed on the merits.
 
 
 38
 In determining whether jury instructions violated a defendant's due process rights to a fair trial, the reviewing court must consider the charge to the jury in its entirety. Cupp v. Naughten, 414 U.S. 141, 146-147 (1973). To rise to the level of a constitutional violation, the alleged erroneous instruction must so affect the entire trial that a conviction violates due process. For purposes of a constitutional claim, it is immaterial that the instructions are "undesirable, erroneous, or 'even universally condemned.' " Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (citing Cupp, 414 U.S. at 146); see also Wood v. Marshall, 790 F.2d 548, 551-52 (6th Cir.1986), cert. denied, 479 U.S. 1036 (1987).
 
 
 39
 Petitioner argues that the trial court failed to instruct the jury that he either had to have an intent to kill or create a high risk of death knowing that death was likely to occur to be convicted of first-degree murder. The district court found that in its charge to the jury, the trial court did instruct that intent to kill is an element of first-degree murder. However, the trial court stated that the jury must find that the person who shot the victim had the specific intent to kill, not the petitioner.[1] In Michigan, intent to kill cannot be imputed from one party to another for purposes of felony murder. People v. Aaron, 409 Mich. 672, 299 N.W.2d 304, 326 (1980). Nevertheless, when reviewing the jury charge as a whole, it is clear that a violation of due process did not occur because the trial court correctly instructed the jury several times as to the requirement of malice for a conviction of felony murder. The trial court charged the jury that
 
 
 40
 before you can find him guilty of murder, you must find that he participated in a robbery, he gave assistance and encouragements in the commission of a robbery, and that the murder occurred during the commission of that robbery; and that he knew that murder was fairly within the plan and that he could have expected that in the course of committing the robbery that the murder would occur.
 
 
 41
 While these instructions as they relate to the malice portion of a felony murder may not be "desirable," they do not rise to a constitutional violation because they required the jury to find that, in addition to aiding and abetting the robbery, petitioner also could have foreseen the victim's death resulting from his actions. This instruction fairly fits within the type of malice defined as a "wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm." If a person can foresee that his actions may result in the death of another, he can fairly be described as acting with "willful and wanton disregard" if he continues his behavior.
 
 
 42
 Furthermore, the trial court also more explicitly instructed the jury on malice:
 
 
 43
 [second degree murder] is also done intentionally or by a person who commits a high degree of risk, does a dangerous act which is dangerous to human [life] and that person dies as a result and the perpetrator could appreciate what he is doing, is a dangerous act and the person could die.
 
 
 44
 In addition, when the jury requested further instructions on second-degree murder during its deliberations, the trial court correctly informed it that murder in the prepetration of a robbery is first-degree murder and that all other murder is second-degree. The trial court continued by instructing the jury that to commit a murder there must be an intent to kill or "the person does [a] dangerous act, he knows the act is [a] dangerous act and he can appreciate it might cause the death of another person...."
 
 
 45
 These two instructions informed the jury that to convict petitioner of murder they must find that he acted with an intent to kill or an appreciation that the possible consequence of his dangerous act is the death of another person. The "dangerous act" portion of the instruction could fit fairly within the "willful and wanton disregard" type of malice sufficient for a conviction of felony murder. See People v. Flowers, No. 133312, 1991 WL 168683, at 8, 1991 Mich.App. LEXIS 385, * 9 (Sept. 3, 1991).
 
 
 46
 Petitioner also argues that the trial court instructed the jury that malice is to be "presumed." However, there is no indication whatsoever in the record that the trial court made such an instruction to the jury.
 
 
 47
 Petitioner's next contention regarding the jury instructions is that the trial court failed to instruct the jury that it must find the petitioner had the intent to kill or created a high risk of death knowing that death is likely to occur in order to convict petitioner for second-degree murder. As the district court found, and as previously discussed, this contention has no merit.
 
 
 48
 Petitioner also argues that the jury instructions regarding armed robbery omitted the essential elements of asportation and that the taking must be in the presence of the victim. The trial court instructed the jury that
 
 
 49
 [t]he statute states any person who shall assault another person in taking and carrying away any property shall be the subject of larceny, said robber being armed with [a] dangerous weapon or are used in such a way to lead the victim to believe it to be a dangerous weapon is guilty of felony.
 
 
 50
 "Taking and carrying away" is asportation. The statement that robbery included using a weapon in such a way as to make the victim believe it was a dangerous weapon implied the taking in the presence of the victim.
 
 
 51
 Petitioner's last contention is that the trial court shifted the burden of proof to petitioner and precluded the jury from finding petitioner guilty of a lesser charge when it instructed the jury that in order to convict petitioner of second-degree murder, it had to find that the killing was not done in the perpetration of a robbery. However, as previously discussed, the trial court instructed the jury several times as to felony murder and second-degree murder, and none of these statements involved a shift in the burden of proof. In addition, the trial court instructed the jury at the outset of its charge that the burden of proof always remained with the State. Finally, when concluding its instructions, the trial court instructed the jury that it could consider four possible verdicts: not guilty, first-degree murder, second-degree murder or armed robbery. Thus, the jury's deliberation of lesser charges was not precluded.
 
 III.
 
 52
 For the foregoing reasons, the judgment of the district court denying petitioner's petition for writ of habeas corpus is AFFIRMED.
 
 
 
 *
 Honorable Charles M. Allen, Senior United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 The trial court instructed the jury that, "they must prove to you that the killing was intentional, that is, that the person who actually did the shooting had the specific intent to cause the death of Mr. Winrow."