16 F.3d 1223
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Larry Noal WHITE, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 93-1463.
 United States Court of Appeals, Sixth Circuit.
 Jan. 24, 1994.
 
 Before: KEITH and NORRIS, Circuit Judges; and ENGEL, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Petitioner Larry White ("White") appeals from the district court's denial of his motion to vacate pursuant to 28 U.S.C. Sec. 2255 without granting discovery or an evidentiary hearing. For the reasons stated below, we AFFIRM the denial and dismissal of White's Sec. 2255 motion to vacate.
 
 I.
 A.
 
 2
 In 1989, a jury convicted White and four co-defendants of participating in a conspiracy to distribute a multi-kilogram amount of cocaine in violation of 21 U.S.C. Secs. 841 and 846. The indictment alleged an eight year conspiracy which began in 1980 and continued until indictment. In 1990, the five defendants appealed their convictions to this court. In a published decision, this court affirmed White's conviction and sentence. See United States v. Walton, 908 F.2d 1289 (6th Cir.), cert. denied, 498 U.S. 906 (1990). Regarding White, Judge Kennedy stated:
 
 
 3
 The evidence presented at trial showed that Larry White was the leader of the conspiracy in the Flint, Michigan area. He obtained large quantities of cocaine from suppliers in other parts of the country and arranged for its transportation, dilution, repackaging, and distribution by other members of the conspiracy. The remaining defendants occupied various positions in White's Flint organization.
 
 
 4
 * * *
 
 
 5
 * * *
 
 
 6
 The government conducted a lengthy investigation into the ring's activities prior to bringing the indictment. Wiretaps placed on Larry White's phones and a microphone hidden in his house provided a considerable amount of evidence against most of the defendants. Additionally, several members of the conspiracy testified against the defendants on behalf of the government.... A jury found all of the defendants ... guilty of conspiracy to distribute cocaine.
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 Following the preparation of presentence reports and hearings on the disputed issues, the District Court sentenced the defendants pursuant to the guidelines established by the United States Sentencing Commission.... Larry White was sentenced to 480 months imprisonment, the maximum sentence authorized by statute.
 
 
 10
 Id. at 1291. Judge Kennedy also discussed particular facts relevant to White's sentencing stating:
 
 
 11
 Defendant Larry White was originally charged both with conspiring to distribute cocaine (Count I) and operating a continuing criminal enterprise (Count II). At his arraignment on these charges, White signed an "Acknowledgement of Indictment" form. The form correctly stated that he faced a maximum sentence of life imprisonment for operating a continuing criminal enterprise but erroneously stated that the maximum sentence for the conspiracy count was 20 years. The actual maximum was 40 years. 21 U.S.C. Secs. 841 and 846. Count II was voluntarily dismissed by the government three days after the jury was selected. After his conviction on Count I, White was sentenced to 480 months imprisonment, the maximum allowed under the statute.
 
 
 12
 Id. at 1295.
 
 
 13
 After this Court affirmed White's conviction and sentence, he cooperated with a government investigation of other drug trafficking offenders. Consequently, the prosecutor moved under Fed.R.Crim.P. 35 to reduce White's sentence from 480 to 360 months; the district court ordered a greater reduction to 300 months.
 
 
 14
 Over the course of these proceedings, White has retained six attorneys. Prior to trial, White was involved in a business relationship with his trial attorney, David Grant. White, Grant, and Marzellus Wilson[1] engaged in a business partnership and Grant performed the legal work for this partnership. White alleges Grant knew of an FBI investigation into the sources of funds for the partnership which led to the ultimate denial of financing for a project. White also alleges that Wilson threatened his life and told him that he should employ Grant as his attorney for his criminal prosecution.
 
 B.
 
 15
 In May 1992, White, through attorney C. Frederick Robinson, filed a motion to vacate his sentence pursuant to 28 U.S.C. Sec. 2255. Regarding this motion, Assistant United States Attorney Haviland stated he would not oppose an evidentiary hearing if White filed a sworn affidavit setting forth his Sec. 2255 allegations. The district court conditioned the grant of an evidentiary hearing upon White's filing of a sworn affidavit. After White executed and filed his affidavit, the district court scheduled an evidentiary hearing for September 29, 1992. Sometime before the hearing, White retained current counsel, Barney Whitesman.
 
 
 16
 Prior to the scheduled hearing, Whitesman entered an appearance for White substituting for prior counsel. The district judge adjourned the evidentiary hearing without date to allow Whitesman's review of the trial transcripts. Once Whitesman became familiar with the issues, the district court allowed him to file an amended motion to vacate. On December 11, 1992, Whitesman filed an amended motion to vacate and a separate motion requesting discovery. The amended Sec. 2255 motion incorporated the original motion verbatim and added other claims of error. The discovery motion sought to depose David Grant, government agents regarding pre-indictment delay, and Citizen's Bank officials who denied financing for the joint venture.
 
 
 17
 On February 19, 1993, the district court denied both motions and entered a judgment dismissing the action. White appeals from this judgment.
 
 II.
 
 18
 White first alleges the district court abused its discretion by denying his Sec. 2255 motion to vacate without an evidentiary hearing or discovery. White next characterizes the government's answer to his amended Sec. 2255 motion as an untimely Motion for Reconsideration. Lastly, White alleges erroneous advice about the statutory maximum penalty for the offense of conviction deprived him of Due Process.
 
 A.
 
 19
 White first argues discovery and an evidentiary hearing were required to resolve his allegations of the ineffective assistance of his trial counsel, David Grant. In its final order, the district court, relying on the files and records of the case, found that White was not entitled to relief on any of his claims and denied the amended Sec. 2255 motion without a hearing or discovery. The court stated, "the Defendant has had ample opportunity to demonstrate prejudice, and that he has failed to do so." We agree.
 
 1.
 
 20
 We first address the denial of an evidentiary hearing. White claims the district court's denial violated Sec. 2255. Section 2255, in pertinent part, states:
 
 
 21
 Unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.
 
 
 22
 White argues because an evidentiary hearing had been scheduled and was later adjourned, the denial of the amended Sec. 2255 motion without a hearing constituted an abuse of discretion.
 
 
 23
 We review a district court's decision not to hold an evidentiary hearing on a Sec. 2255 motion for an abuse of discretion. Kowalak v. United States, 645 F.2d 534, 537 (6th Cir.1981). An evidentiary hearing need not be conducted on a Sec. 2255 motion to vacate if the files and records of the case conclusively show that petitioner is not entitled to relief. Baker v. United States, 781 F.2d 85, 92 (6th Cir.), cert. denied, 479 U.S. 1017 (1986); Bryan v. United States, 721 F.2d 572, 577 (6th Cir.1983), cert. denied, 465 U.S. 1038 (1984).
 
 
 24
 White bases his Sec. 2255 motion on four allegations of ineffective assistance of counsel. White argues Grant: (a) acted under a conflict of interest; (b) failed to file a motion to suppress evidence allegedly seized beyond the scope of the search warrant; (c) failed to move to dismiss the indictment based on pre-indictment delay; and (d) failed to advise him of the statutory maximum sentence. We discuss each allegation of error below.
 
 
 25
 To establish ineffective assistance of counsel a petitioner must show that (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the defendant so as to render the trial unfair and the result unreliable. Strickland v. Washington, 466 U.S. 668, 687 (1984). Strickland's prejudice prong presents a heavy burden because a defendant first must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. at 689. In addition, a petitioner must show but for errors of counsel, the result of the proceeding would have been different. Lynott v. Story, 929 F.2d 228, 232 (6th Cir.1991). A reviewing court's scrutiny of counsel's performance is highly deferential. Cobb v. Perini, 832 F.2d 342, 347 (6th Cir.1987), cert. denied, 486 U.S. 1024 (1988).
 
 
 26
 a.
 
 
 27
 First, White presents five examples of Grant's alleged conflict of interest: (1) White, Grant and Marzellus Wilson, another member of the drug conspiracy, were business partners in a condominium and sewage treatment venture; (2) Grant represented the partnership; (3) Grant knew something about an FBI investigation into the partnership's financing and did not disclose this investigation to White; (4) Grant had previously represented Wilson in non-related criminal matters; (5) Wilson told White to let Grant take care of this federal prosecution and also threatened White's life if he did not keep quiet.
 
 
 28
 The district court found Grant's sworn affidavit rebutted the above allegations. Under oath, Grant stated:
 
 
 29
 6. I did have various business dealings with Mr. White before I began my representation of him on the criminal charges. These business dealings did not create any conflict of interest. I am unaware of any conflict of interest created by my representation of Mr. White.
 
 
 30
 7. I was never told, nor did I believe, that I was a target or subject of any criminal investigation involving Mr. White [the FBI financing investigation]. My representation of Mr. White was unaffected by any concern for my own status, as I was and am unaware of any charges that could be brought against me based on my association with him.
 
 
 31
 8. I have never represented Marzellus Wilson in any law suit, civil or criminal, and am unaware of any conflict of interest created by my representation of Larry White.
 
 
 32
 In addition, Grant swore that "at no time did Mr. White tell me that he or his family had been threatened by Marzellus Wilson or any other alleged drug dealer."
 
 
 33
 White did not raise Grant's disputed representation of Wilson below and this argument is not properly before us. See United States v. Polselli, 747 F.2d 356, 357 (6th Cir.1984), cert. denied, 469 U.S. 1196 (1985). White's awareness of his and Grant's previous business relationship and of the legal work Grant performed for the partnership is undisputed. This relationship, on its face, presents no conflict of interest. In addition, the record reflects Grant was unaware of any conflict of interest. In fact, Grant specifically denied any conflict created by previous business dealings. He similarly denied any knowledge of an FBI investigation. White provides no evidence, beyond mere allegation, of any possible conflict.
 
 
 34
 White correctly argues prejudice is presumed where a conflict of interest exists. This does not mean, however, any allegation of a conflict entitles the claimant, ipso facto, to an evidentiary hearing. Here, White offered no evidence of any personal knowledge of a conflict. Thus, Grant's affidavit successfully rebuts White's allegations and no evidentiary hearing was necessary.
 
 
 35
 b.
 
 
 36
 White's next argument concerns Grant's failure to file a motion to dismiss the indictment based on pre-indictment delay. White argues although the government obtained evidence from wiretaps in 1986 which amounted to "in reality, its entire case," the government then delayed the indictment to gain a "tactical advantage" over him. Such "tactical advantage" was, according to White, bringing him under the United States Sentencing Guidelines which became effective November 1987. The district court found the delay was justified by an ongoing investigation. We agree. See United States v. Sherlock, 962 F.2d 1349, 1355 (9th Cir.1989), cert. denied, --- U.S. ----, 113 S.Ct. 419 (1992).
 
 
 37
 In this case, the investigation leading to the indictment continued until the 1988 search of White's residence. The indictment itself alleged a conspiracy which began in 1980 and continued through the return of the indictment. Here, no delay occurred between the offense and the indictment and any motion to dismiss based on pre-indictment delay would have failed.
 
 
 38
 c.
 
 
 39
 White argues Grant should have moved to suppress "among other things, photographs" alleging the items were seized illegally because they exceeded the scope of the search warrant and were not found in plain view. White additionally asserts that a photograph of him with Marzellus Wilson unfairly prejudiced his case. Further, White notes that "it is also questionable ... whether the search warrant had been properly signed at the time of its execution."
 
 
 40
 The district court found the warrant was properly signed and "any items seized beyond the scope of the warrant were arguably found in plain view during the legal search." The record reflects the search warrant was properly signed and we agree that the items appear to have been found in plain view. Thus, no Strickland violation occurred as a motion to suppress was not necessary nor would it have been successful.
 
 
 41
 Perhaps more importantly, assuming arguendo the unidentified items were improperly allowed, such admission was clearly harmless error. As this court found on direct appeal, White was convicted by a "considerable amount" of evidence to the contrary, most notably the evidence obtained from the wiretaps. It is highly doubtful, and White fails to argue, the outcome in this case would have differed had the photograph or other "things" been suppressed.
 
 
 42
 d.
 
 
 43
 Finally, White argues he was given erroneous information about the statutory maximum for the conspiracy offense which amounted to ineffective assistance of counsel. It is undisputed that White initially received erroneous advice from both the government and his attorney about the statutory maximum for his conspiracy charge. The government concedes White signed an erroneous Acknowledgement of Indictment which stated a 20-year maximum sentence for the conspiracy charge which actually carries a 40-year maximum. White argues Grant's misinformation about the statutory maximum led him to reject a plea agreement for 30 years. In this case, however, no Rule 11 plea agreement was offered to White. In addition, at trial White adamantly denied any guilt and showed no inclination toward pleading guilty. The district court correctly found Grant's affidavit rebutted White's allegations and that the trial court specifically corrected any earlier error, on the record, at a pre-trial hearing. We agree.
 
 First, Grant stated in his affidavit:
 
 44
 At some time before trial began government counsel informed me that the maximum sentence on the conspiracy charge was in fact 40 years; that the guideline sentence on the conspiracy charge was greater than the guideline sentence on the CCE charge, and that he would, therefore, be dismissing the CCE charge. I explained all that to Mr. White. We both knew, before trial began, that the maximum sentence on the conspiracy charge was not 20 years, but 40.
 
 
 45
 The above statement specifically rebuts White's allegation. Additionally, the district court explicitly clarified the true maximum sentence, on the record, at a pre-trial hearing held February 28, 1989. White elected to go to trial after being informed by the court itself of the maximum penalty he was facing. At an evidentiary hearing held February 28, 1989 the following discourse took place:
 
 Assistant United States Attorney Haviland:
 
 46
 It's been drawn to my attention that I believe all of the defendants were misadvised as to the maximum penalty on Count I. All of them are here today with their attorneys. So I would like to take advantage of this fact to advise them formally on the record that the maximum penalty upon conviction for Count I would be 40 years imprisonment, not 20 years imprisonment ... because the charge specifies ... the amounts of cocaine involved were "multi-kilograms" ... now the minimum penalty may not apply since this is a conspiracy charge rather than a substantive offense. But the maximum penalty, I think, clearly does apply ... the government contends that the maximum penalty would be 40 years rather than 20 years.
 
 
 47
 * * *
 
 
 48
 * * *
 
 
 49
 The Court: Any defense counsel who disputes that? All right. Then I want you to take a couple of--Mr. Grant?
 
 
 50
 Mr. Grant: Yes, your Honor. My only objection is that this was brought to my attention this morning by Mr. Haviland. And I would like to have some opportunity to research that particular--
 
 
 51
 The Court: Well that's fine. And that's [sic] no question that you are entitled to that. I think at this point, and of course even if you don't dispute it, I'll have to make that determination at the appropriate time if it becomes appropriate to do so.
 
 
 52
 The question right now becomes whether or not you are able to and ought to communicate to your clients that the risk is that the maximum penalty in Count I .. would be 40 years rather than 20 years. And I'd like you to confer with your clients right now so you can represent to me, each of the lawyers, represent to me that they have conferred and that they understand that is the risk involved in this case in connection with Count I.
 
 
 53
 All right is there any lawyer whose client has not had it explained to him and who wants to register anything which would indicate that his client is either not here or does not understand? Your silence under these circumstances will be your affirmative representation to me that you have discussed it with your client and that your client understands the risk. All right.... If there is any client who does not understand that the risk on conviction of Count I is 40 years imprisonment, please stand at this time. All right. There is nobody standing.
 
 
 54
 (Joint Appendix, p. 90-92).
 
 
 55
 This court recently discussed erroneous advice from counsel and held "even if the attorney gave [the defendant] incorrect information, the judge's advice on the record, as a matter of law, was sufficient to bar [the defendant] from relying on a claim that he pled guilty on a mistaken assumption about the consequences of going to trial." United States v. Todaro, 982 F.2d 1025, 1029 (6th Cir.1993), cert. denied, --- U.S. ----, 113 S.Ct. 2424 (1993), discussing Baker v. United States, 781 F.2d 85 (6th Cir.), cert. denied, 479 U.S. 1017 (1986).
 
 
 56
 Here, even if White initially relied upon Grant's incorrect advice, the district court's later clarification of Count I barred any further reliance. Such clarification cured any ineffective assistance under Strickland. In addition, White failed to prove any actual prejudice resulting from the misadvice for three reasons: (1) at the time White plead not guilty, he faced a possible life sentence on a count which was later dismissed; (2) the government did not offer White a plea agreement; and (3) White's original sentence of 480 months was reduced to 300 months. White has not shown how, but for this advice, the outcome of his trial would have differed.
 
 
 57
 White, however, argues he was prejudiced because he lost an opportunity to plea bargain and fully cooperate with the government from the "get go." He also argues because Grant disagreed with the district judge's interpretation of the statutory maximum and told him so that he continued to rely upon the erroneous maximum. Regardless, the record reflects that White knew before trial he risked a forty-year sentence.
 
 
 58
 Based on the above analysis, White failed to allege any claim of ineffective assistance of counsel under Strickland. Although the district judge originally scheduled a hearing, it was within his discretion to deny the amended motion without a hearing. Here, the same district judge who heard White's Sec. 2255 motion presided over White's original five week jury trial. The trial judge's familiarity with the issues and the record is uncontroverted. The district court properly dismissed his Sec. 2255 motion to vacate, without holding an evidentiary hearing because the files and records of this case conclusively show that petitioner is not entitled to relief. Baker v. United States, 781 F.2d 85, 92 (6th Cir.), cert. denied, 479 U.S. 1017 (1986).
 
 2.
 
 59
 We next address the denial of discovery. In his discovery motion, White sought to depose "trial counsel and bank officials on the issues of the ineffective assistance and conflict of interest claims" and "Government agents on issues of the pre-arrest delay and investigation of the partnership." White alleges the complexity of the issues involved warranted discovery. The district court correctly found Petitioner only has a right to discovery "where specific allegations before the court show reason to believe that the Petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." Harris v. Nelson, 394 U.S. 286, 300 (1969), reh'g denied, 394 U.S. 1025, see also, Lynott v. Story, 929 F.2d at 232. The district court denied discovery finding none of White's claims were likely to be successful. The above analysis demonstrates the insufficiency of White's claim of ineffective assistance of counsel. Thus, we affirm the district court's denial of discovery because White was not entitled to relief on his claims.
 
 B.
 
 60
 White's second argument characterizes the government's answer to his amended Sec. 2255 motion as an untimely Motion for Reconsideration. According to White, the answer, which requested a denial without a hearing, sought a reconsideration of the previous grant of an evidentiary hearing and it was not filed within ten days of entry of the initial order granting a hearing.
 
 
 61
 The record reflects White failed to raise this issue below. Thus, the question is not properly before us. In addition, the claim lacks merit. The adjournment of the original hearing and the filing of an amended motion presented a new question of whether, in the mind of the trial judge, an evidentiary hearing was necessary. The district court requested an answer to the amended motion. Here, the government's answer, as the district court found, rebutted White's allegations and removed any need for an evidentiary hearing.
 
 C.
 
 62
 Lastly, White argues the errors in his indictment and acknowledgment of indictment did not give him proper notice of the 40-year maximum for Count I and violated his due process rights.
 
 
 63
 As discussed above, the district court cured any lack of notice stemming from the erroneous indictment and acknowledgment and White had no basis to rely upon the earlier error. In his affidavit, White swears no one advised him of the error. Grant's affidavit and the pre-trial hearing transcript, however, belies such allegation. Before trial, the district court acknowledged and clarified the error on the record and asked each defendant if they understood. If White did not understand this risk, the district court provided him with the opportunity to stand and assert any confusion about Count I. White sat silent in the face of this opportunity. The transcript shows White knew he faced a possible 40-year maximum. Thus, no due process violation occurred for lack of notice.
 
 III.
 
 64
 We, therefore, conclude the district court properly denied White's motion to vacate without discovery or an evidentiary hearing and we AFFIRM the decision of the Honorable Stewart A. Newblatt to deny and dismiss White's Sec. 2255 motion to vacate.
 
 
 
 [1]
 Although Wilson was apparently a key player in the drug conspiracy, he was not named in the indictment. During White's trial he was a federal fugitive from a parole violation warrant