RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0028p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 15-5343

JAMES ALSANTE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:14-cr-00061—Pamela Lynn Reeves, District Judge.

Argued: January 27, 2016

Decided and Filed: February 5, 2016

Before: GUY, SUTTON, and McKEAGUE, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Laura E. Davis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Brooklyn Sawyers, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Laura E. Davis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Brooklyn Sawyers, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

_____

### OPINION

_____

SUTTON, Circuit Judge. James Alsante pleaded guilty to failing to register as a sex offender under federal law. At his sentencing hearing, the district court permitted the

government to introduce evidence that Alsante had committed other sexual-misconduct crimes with a minor, all of which were the subject of pending state court charges. The district court relied on that conduct in imposing a 54-month sentence, an upward variance from his advisory guidelines range. Is that fair or more to the point constitutional? Did the court violate Alsante's due process rights or his rights against self-incrimination by permitting the government to introduce evidence related to pending state court charges at his federal sentencing hearing? Alsante says that it did because any attempt to rebut the government's evidence at the federal sentencing hearing hampered his ability to defend himself in state court. For the reasons that follow, we hold that it did not.

The Sex Offender Registration and Notification Act requires convicted sex offenders to register periodically with state officials, updating their address and other identifying information along the way. 42 U.S.C. § 16913. Alsante pleaded guilty to failing to comply with these requirements. *See* 18 U.S.C. § 2250(a). The probation officer initially calculated a 15–21 month advisory guidelines range. In his presentence investigation report, however, the officer noted that Alsante faced pending charges in Tennessee state court, where he stood accused of three counts of statutory rape by an authority figure and one count of being a sex offender living with a minor. The charges stemmed from Alsante's alleged "sexual[] penetrat[ion] [of] a female victim" on three occasions in 2011. R. 25 at 9.

Due in part to this other conduct, the government sought an upward departure and an upward variance from the guidelines range, urging the court to impose a ten-year prison sentence, the statutory maximum. *See* 18 U.S.C. § 2250(a). The government also notified the court that it intended to introduce testimony related to Alsante's pending state law charges at his sentencing hearing.

At the hearing, the court admitted this evidence over Alsante's objection. The government called S.W., the alleged victim of Alsante's state law offense, to testify. She said that Alsante had been in a relationship with her mother and had lived with the family for a period of time. When she was fourteen, she added, Alsante sexually abused her on several occasions. The government next called S.W.'s mother, who described several "red flags" that had alerted her to the possibility of sexual contact between Alsante and S.W. R. 39 at 60. After cross-

examining both witnesses, defense counsel put on testimony by Alsante's mother, who discussed her relationship with Alsante and his prior run-ins with the law. Before delivering its sentence, the district court asked Alsante whether he wished to make a statement. He declined.

The district court denied the government's motion for an upward departure but granted its motion for an upward variance. "[I]t is evident from Mr. Alsante's history and the testimony we have heard here today," the court explained, "that the public needs to be protected from future crimes perpetrated by Mr. Alsante." *Id.* at 153–54. The court mentioned S.W.'s "very credible" testimony and sentenced Alsante to 54 months in prison—well below the government's request but well above the initially calculated guidelines range. *Id.* at 154.

*Due Process Clause.* Alsante's due process argument begins with a concession. He acknowledges that, under a federal statute, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. He acknowledges that the same is true under the sentencing guidelines. U.S.S.G. §§ 1B1.4, 6A1.3(a). And he acknowledges that the statute and guidelines authorized the district court to admit testimony by S.W. and her mother.

The problem, says Alsante, is that the court's evidentiary approach, as applied to *his* sentencing proceeding and as applied to *this* evidence, violated his due process rights nonetheless. When the district court admitted evidence related to the pending state charges, it unconstitutionally burdened his ability to mount a robust defense in the state court case. Had Alsante vigorously cross-examined the witnesses or otherwise attempted to rebut their claims, he says that he might have revealed his state court trial strategy or elicited damaging information. He thus had to choose between (1) offering a half-hearted mitigation argument with respect to his federal sentence or (2) increasing his chances of conviction with respect to the state charges.

But the Due Process Clause does not offer convicted defendants at sentencing the same "constitutional protections afforded defendants at a criminal trial." *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc). "[B]oth before and since the American colonies became a nation," *Williams v. New York* explains, "courts in this country and in England

practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." 337 U.S. 241, 246 (1949). That tradition has become more settled over time, because "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant—if not essential—to [the judge's] selection of an appropriate sentence." *Id.* at 247. An imperative of "evidentiary inclusiveness"—"a frame of reference as likely to facilitate leniency as to impede it," *United States v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013)—explains why the Evidence Rules, the Confrontation Clause, and the beyond-a-reasonable-doubt standard of proof do not apply at sentencing. *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) (beyond a reasonable doubt); *Williams v. New York*, 337 U.S. at 246–47, 252 (Evidence Rules); *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006) (Confrontation Clause); *see generally United States v. Tucker*, 404 U.S. 443, 446 (1972).

What, then, does the Due Process Clause demand at sentencing? It demands only that the hearing be "fundamentally fair" and that the sentence turn on "reliable information." *United States v. Gatewood*, 230 F.3d 186, 191 (6th Cir. 2000) (en banc). Gauged by this test, the district court's sentencing procedure passes. The district court permitted defense counsel to cross-examine S.W. and her mother, call Alsante's mother to the stand, raise objections, and make "extended arguments" on disputed points. *Williams v. New York*, 337 U.S. at 252. The court then asked Alsante whether he wished to make a statement in allocution and, when he declined, offered a detailed explanation for the 54-month sentence. Alsante received what the Constitution requires—a "fundamentally fair" sentencing hearing that permitted him to test the reliability of the information submitted by the government. *Gatewood*, 230 F.3d at 191.

Even though the district court offered him these options, Alsante responds, he could not fully use them without revealing his state court defense. But due process does not relieve the defendant of all difficult tactical choices; it requires only that those choices be available to him in the course of the proceeding. *See McGautha v. California*, 402 U.S. 183, 214–17 (1971), *vacated in part on other grounds*, 408 U.S. 941 (1972); *see also Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 287 (1998) (citing *McGautha* for its self-incrimination analysis).

Notably, at the same time that Alsante challenges the fullness of these procedures, he does not claim that the district court relied on inaccurate or unreliable information in sentencing him.

*Self-Incrimination Clause.* Alsante's self-incrimination argument fares no better. That clause forbids the government from "compell[ing]" anyone "to be a witness against himself" in "any criminal case," U.S. Const. amend. V, a guarantee that requires courts to determine "whether, considering the totality of the circumstances, the free will of the witness was overborne," *United States v. Washington*, 431 U.S. 181, 188 (1977). Alsante in one sense was not "compelled" to say anything or for that matter incriminate himself, as he did not speak during the sentencing hearing. Even so, if the defendant's exercise of his self-incrimination rights comes at a significant cost—if he faces coercive pressure to speak—that pressure may itself amount to the sort of compulsive force that the Fifth Amendment forbids. Defendants have been "compelled" to incriminate themselves when they were threatened with the loss of their jobs, *see Garrity v. New Jersey*, 385 U.S. 493, 500 (1967), the suspension of their professional licenses, *see Spevack v. Klein*, 385 U.S. 511, 516 (1967), or a ban on holding public office, *see Lefkowitz v. Cunningham*, 431 U.S. 801, 807–08 (1977).

But Alsante did not face this type of compulsion or any other that the Fifth Amendment prohibits. The district court did not force (or even encourage) him to give up his right against self-incrimination. He did not suffer "actual or threatened physical harm" for remaining silent, and he did not face "mental coercion overbearing the will." *Brady v. United States*, 397 U.S. 742, 750 (1970). Alsante no doubt felt pressure to rebut the government's evidence so that he could reduce his sentence. That is the same pressure, however, felt by *every* defendant who must decide whether to testify or remain silent. And it comes not from the sort of illegitimate compulsion or economic sanctions that the Supreme Court has condemned but from "the force of historical fact[s]" related to the defendant's conduct and "the strength of the State's case built on these facts." *Williams v. Florida*, 399 U.S. 78, 84–85 (1970). If this sort of pressure suffices to violate the guarantee, every defendant who has ever stood trial was compelled to testify—and the stronger the government's case the worse the violation. That is not how it works.

Our court previously rejected a similar argument in a factually indistinguishable case. *See United States v. Baze*, 32 F.3d 569 (6th Cir. 1994) (per curiam) (unpublished table

disposition). The defendant in *Baze* claimed that "he was faced with a Solomon's choice as to whether to testify at sentencing in [a federal] case and risk self-incrimination as to . . . pending [state] murder charges." *Id.* at *1. We made short work of that argument, noting that, "[c]ertainly, [the defendant's] testimony in [the federal] case cannot be said to have been 'compelled.'" *Id.* at *5. The Tenth and Eleventh Circuits have reached the same conclusion. *Harvey v. Shillinger*, 76 F.3d 1528, 1534–36 (10th Cir. 1996); *United States v. Gonzalez*, 315 F. App'x 856, 858 (11th Cir. 2009) (per curiam).

The Supreme Court, it bears adding, has rejected self-incrimination arguments that put defendants to more difficult choices than the ones Alsante faced. *McGautha* addressed an Ohio trial procedure that required the jury to "determine[] guilt and punishment after a single trial and in a single verdict." 402 U.S. at 185. The capital defendant argued that "the desire to address the jury on punishment unduly encourage[d] waiver of [his] privilege to remain silent on the issue of guilt." *Id.* at 213. The Court acknowledged that the single-verdict procedure placed pressure on capital defendants to take the stand. *Id.* at 214–15. But the procedure still did not violate the guarantee because it did not compel defendants to testify against themselves. *Id.* at 217, 220. The same was true in *Brady v. United States*, 397 U.S. at 750–51, which rejected a similar claim when the government, through plea bargaining, encouraged a defendant to plead guilty in exchange for a lighter sentence. So also in *Baxter v. Palmigiano*, 425 U.S. 308, 313, 317–18 (1976), which held that prisoners were not compelled to testify during a prison disciplinary proceeding even when the disciplinary board could hold their silence against them in imposing sanctions. Ditto for *Ohio Adult Parole Authority v. Woodard*, 523 U.S. at 285–88, which decided that death-row inmates were not compelled to speak during clemency interviews even when the interviewers could draw adverse inferences from an inmate's silence. And for *McKune v. Lile*, 536 U.S. 24, 30–31, 41–45 (2002) (plurality opinion), which approved a procedure that denied incarcerated sex offenders "visitation rights, earnings, work opportunities," and other privileges for failing to participate in a treatment program that required them to disclose information about past crimes.

Our court undertook a comparable analysis when considering an individual who faced parole revocation proceedings and state law criminal charges related to the same conduct. *Lynott*

*v. Story*, 929 F.2d 228, 230–32 (1991). Like Alsante, the parolee could remain silent during the federal proceedings and risk revocation, or he could testify and risk incriminating himself on the state charges. *Id.* at 230. But we found no Fifth Amendment violation, holding that the parolee was not compelled to testify against himself. *Id.* at 230–32; *see also Ryan v. Montana*, 580 F.2d 988, 990–91 (9th Cir. 1978). We also affirmed a district court's decision to deny an acceptance-of-responsibility reduction to a defendant who did not admit to certain criminal conduct, even though his silence was based on fear of self-incrimination. *United States v. Clemons*, 999 F.2d 154, 161 (6th Cir. 1993). And other courts have rejected Fifth Amendment challenges to the consideration of uncharged conduct at sentencing, even if the government could prosecute the defendant for that conduct in the future. *United States v. Fleming*, 849 F.2d 568, 569–70 (11th Cir. 1988) (per curiam); *United States v. Marshall*, 719 F.2d 887, 892 (7th Cir. 1982).

Taken together, these decisions demonstrate that the exercise of Fifth Amendment rights need not be cost-free. "The criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to follow," *McGautha*, 402 U.S. at 213 (quotation omitted), and the number of "difficult judgments" increases rapidly as the amount of alleged misconduct rises. But while a defendant faced with multiple charges (or with a sentence based on uncharged conduct) may typically follow "whichever course he chooses, the Constitution does not . . . always forbid requiring him to choose." *Id.* If the Constitution tolerates the enormous pressure imposed by the single-verdict procedure on a death-penalty defendant, *see id.* at 217, it assuredly tolerates the subtler nudges imposed by reference to pending state law charges during a federal sentencing hearing. *See McKune*, 536 U.S. at 41–42 (plurality opinion); *Jenkins v. Anderson*, 447 U.S. 231, 238 (1980).

Consider, in addition, the implications of Alsante's argument for federal sentencing practices. The guidelines require courts to consider "relevant conduct" in calculating a defendant's base offense level, *see* U.S.S.G. § 1B1.3(a), and such conduct includes criminal acts that have not yet resulted in a charge, *see United States v. Miller*, 910 F.2d 1321, 1326–27 (6th Cir. 1990). Courts, including our own, have consistently approved the consideration of this uncharged conduct against a variety of constitutional challenges. *See, e.g., Witte v. United States*, 515 U.S. 389, 403–04 (1995) (double jeopardy claim); *United States v. Phillips*, 516 F.3d

479, 485–86 (6th Cir. 2008) (Sixth Amendment jury trial claim); *Marshall*, 719 F.2d at 892 (self-incrimination claim).

In the face of these precedents, Alsante concedes that the government could have introduced testimony from S.W. and her mother had no state law charges been pending. But is that really an improvement from his (or any defendant's) perspective? The testimony at the federal sentencing hearing could well become the basis for later state charges. And his theory would be particularly anomalous given that our court, along with every other circuit to address the question, has approved the consideration of conduct for which a defendant was *acquitted*. *United States v. White*, 551 F.3d 381, 386 (6th Cir. 2008) (en banc); *see also United States v. Gobbi*, 471 F.3d 302, 313–14 (1st Cir. 2006); *United States v. Vaughn*, 430 F.3d 518, 525–27 (2d Cir. 2005); *United States v. Jimenez*, 513 F.3d 62, 88 (3d Cir. 2008); *United States v. Perry*, 560 F.3d 246, 258–59 (4th Cir. 2009); *United States v. Farias*, 469 F.3d 393, 399 (5th Cir. 2006); *United States v. Horne*, 474 F.3d 1004, 1006–07 (7th Cir. 2007); *United States v. Tyndall*, 521 F.3d 877, 883–84 (8th Cir. 2008); *United States v. Mercado*, 474 F.3d 654, 656–58 (9th Cir. 2007); *United States v. Magallanez*, 408 F.3d 672, 684–85 (10th Cir. 2005); *United States v. Faust*, 456 F.3d 1342, 1347–48 (11th Cir. 2006); *United States v. Settles*, 530 F.3d 920, 923–24 (D.C. Cir. 2008); *see also United States v. Watts*, 519 U.S. 148, 156–57 (1997) (per curiam). For the same reasons, Alsante's argument might prevent state governments from prosecuting conduct that could give rise to federal charges (or vice versa), undermining long-established caselaw that permits separate sovereigns to prosecute the same acts. *See, e.g.*, *Moore v. Illinois*, 55 U.S. (14 How.) 13, 19–20 (1852).

Alsante's theory has one more problem: the proposed remedy. He argues that the Fifth Amendment required the district court (or the prosecutor) to delay his federal sentencing hearing until after the state proceedings. But postponing the federal sentencing would not have resolved Alsante's dilemma; it just would have switched the source of it. Alsante could then have claimed that the *state* trial should be delayed, since holding it might pressure him to offer incriminating testimony that could be invoked during his *federal* sentencing. He could, in other words, have held both the state and federal proceedings in limbo, arguing that neither could go

forward until the other had commenced—an argument unlikely to find many receptive listeners this side of the looking glass. *Cf. United States v. Jones*, 299 F.3d 103, 111 (2d Cir. 2002).

Future litigants in Alsante's shoes are not without hope. There may be legitimate reasons for holding a federal sentencing hearing after the completion of a state trial on related charges. But if that is the case, the defendant need only file a motion for a continuance, which the district court may (in its discretion) grant. Because Alsante never asked for such a continuance, however, the sentencing judge never considered granting one.

*Substantive reasonableness.* Alsante also challenges the substantive reasonableness of his sentence. To be reasonable, a sentence "must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary[] to comply with the purposes of" the federal sentencing statute. *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (quotations omitted); *see* 18 U.S.C. § 3553(a). The district court's sentence satisfies these requirements. The court cited several factors in support of its decision to impose an upward variance. It noted that S.W.'s "very credible" testimony demonstrated Alsante's continued lack of "respect for the law"; that he had violated the sex-offender registration requirements twice before; and that he had "a history of drug abuse and sexual crimes against minors." R. 39 at 154. Based on these considerations, the court concluded that "the only way to protect the public from future crimes by Mr. Alsante is to grant the Government's motion for [an] upward variance." *Id.* The court's 54-month sentence adequately accounted for these factors, including Alsante's repeated infractions and the evidence of his molestation of S.W.

For these reasons, we affirm.