NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0605n.06

No. 15-2391

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Nov 16, 2016 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| FRED DENNIS HALL, | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    DAUGHTREY, ROGERS, COOK, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.   Following defendant Fred Hall's guilty plea to a charge of being a felon in possession of a firearm, the district court sentenced Hall to 96 months in prison, a sentence that represented an upward departure from the advisory Guidelines range of 51 to 63 months.  Hall now challenges both the procedural and substantive reasonableness of that sentence, contending that the district court erred in concluding that the defendant had stolen the firearm later found in his possession, erred in denying Hall a reduction in his sentence for his acceptance of criminal responsibility, and erred in departing upward from the applicable Guidelines range.  We find no merit to any of Hall's allegations of error and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In early August 2014, Brad Bench reported to law enforcement authorities that someone had broken into his barn and had stolen some of his hunting equipment.  Among the missing

items were a Charles Daly pump-action shotgun, the case and shells for that firearm, a pair of Barska binoculars, and three trail cameras. Approximately three months later, the authorities learned that defendant Hall had approached Joshua Helenhouse and tried to sell him a shotgun and three trail cameras. Although Helenhouse declined the offers, Hall loaned the gun to Helenhouse so that Helenhouse's son could use the weapon during deer-hunting season. Examination of the shotgun revealed that its make, model, and serial number matched those of the shotgun stolen from Brad Bench. Moreover, the gun case in which Hall transported the shotgun to Helenhouse contained 18 yellow shotgun shells, the same type of shells Bench claimed he had stored in the pocket of the case before the gun was taken from his barn.

As part of the investigation into Hall's connection with the theft of Bench's hunting equipment, authorities received consent from Beverly Evans, Hall's girlfriend, to search her residence, where Hall stored some of his belongings. During the search of the premises, authorities found personal papers of Hall's, cellular phones, three trail cameras, two pairs of binoculars, and a tree stand. One of the recovered binoculars was manufactured by Barska and matched the model and size of the binoculars that Bench had reported stolen. In fact, when Bench was shown a photograph of the binoculars, he stated, "[T]hey look like mine." However, the other items found during the search, including the three trail cameras, were not Bench's, but later were identified as items stolen from other individuals who lived near Hall or near women with whom Hall was romantically involved.

In light of the uncontroverted evidence that Hall was seen in possession of the stolen shotgun and previously had been convicted of numerous felonies, he pleaded guilty to the felon-in-possession charge. At his sentencing hearing, however, Hall objected to the recommendation in the presentence report that his base offense level be increased four levels due to his alleged

involvement in the theft of Bench's shotgun. He also argued before the district court that he should be given credit for his acceptance of responsibility for the offense with which he was charged.

Despite those arguments, the district court concluded that the government had established, by a preponderance of the evidence, that Hall had taken possession of Bench's shotgun during a burglary of Bench's barn. In addition, the district court noted that Hall's continued denial of his role in obtaining the stolen property belied his claim that he was entitled to a reduction in sentencing for acceptance of responsibility. Given Hall's extensive criminal record and his failure to conform his conduct to societal standards, the district court then departed upward from the applicable Guidelines sentencing range and sentenced Hall to 96 months in prison—the same sentence Hall had received for an earlier, 2004 felon-in-possession conviction. Hall now appeals the district court's sentencing rulings.

**DISCUSSION**

**Standard of Review**

"We review a district court's sentencing determination, under a deferential abuse-of-discretion standard, for reasonableness." *United States v. Pearce*, 531 F.3d 374, 384 (6th Cir. 2008) (citation and internal quotation marks omitted). Reasonableness review of a sentence "has both a procedural and a substantive component." *United States v. Erpenbeck*, 532 F.3d 423, 430 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. Appellate

review of the substantive reasonableness of a sentence "will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* "A sentence is substantively unreasonable if the sentencing court arbitrarily selected the sentence, based the sentence on impermissible factors, failed to consider pertinent [18 U.S.C.] § 3553(a) factors, or gave an unreasonable amount of weight to any pertinent factor." *United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir. 2012) (citation omitted). Although we "may apply a rebuttable presumption of reasonableness to sentences within the Guidelines," *Pearce*, 531 F.3d at 384 (citing *Gall*, 552 U.S. at 51), the fact that a sentence imposed by a district court is outside the Guidelines range does not mean that we may apply a presumption that the sentence is unreasonable. *Gall*, 552 U.S. at 51.

**Challenge to the § 2K2.1(b)(6)(B) Enhancement**

Upon Hall's conviction for being a felon in possession of a firearm, the United States Probation Office recommended assigning the defendant a Guidelines base offense level of 14 and adding two additional levels because the firearm possessed during the offense had been reported stolen. *See* USSG § 2K2.1(a)(6)(A); (b)(4)(A). The district court agreed not only with those initial calculations, but also with the probation office's recommendation that Hall's offense level be increased another four levels because the defendant "used or possessed any firearm or ammunition in connection with another felony offense." USSG § 2K2.1(b)(6)(B). Pursuant to the provisions of the commentary to USSG § 2K2.1(b)(6)(B), the four-level increase "appl[ies] . . . in a case in which a defendant who, during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary." USSG § 2K2.1, comment. (n.14(B)(i)). Although he readily admits that he possessed a firearm and that he was a convicted felon, Hall objects to the

application of the four additional levels in calculating his Guidelines sentencing range because, he submits, there is insufficient evidence to conclude that he was involved in the burglary of Brad Bench's barn. In fact, Hall insists that the stolen shotgun was given to him by another individual and that he merely was attempting to sell the gun as a favor to that friend.

In the district court, "[t]he burden is on the government to prove, by a preponderance of the evidence, that a particular sentencing enhancement applies." *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir. 2003). We have held that proof by a "preponderance of the evidence" may be defined as "such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in [the mind of the finder of fact] belief that what is sought to be proved is more likely true than not true." *Williams v. Eau Claire Pub. Sch.*, 397 F.3d 441, 446 (6th Cir. 2005). We then review the district court's conclusion that the preponderance-of-the-evidence standard has been met for clear error, according due deference to the district court's determinations. *See, e.g.*, *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

It is true that no direct evidence ties Hall to the burglary of Bench's barn and to the theft of the Charles Daly pump-action shotgun. But Hall's later possession of the stolen gun was hardly his only tie to the burglary of the barn. However, other information before the district court supports its conclusion that what the government sought to prove "is more likely true than not true." *Williams*, 397 F.3d at 446. In addition to Hall's admitted possession of the stolen gun, the district court was aware of the defendant's record of prior thefts and of the fact that items of hunting equipment stolen from other individuals who lived in close proximity to residences used

by the defendant also were found in Hall's constructive possession. Furthermore, the district court heard testimony that a pair of Barska binoculars were found among Hall's possessions, that Brad Bench claimed that those binoculars appeared to be his, and that Barska binoculars were not commonly used by hunters in that area.

Our review of the appellate record leads us to the inescapable conclusion that the district court did not commit clear error in determining that the evidence made it more likely true than not that Hall was involved in the theft of items from Bench's barn. As a result, there is no merit to the defendant's challenge to the application of the § 2K2.1(b)(6)(B) enhancement to his sentence calculation.

**Challenge to the Denial of a Sentence Reduction for Acceptance of Responsibility**

The district court also refused to grant Hall's request for a reduction in his Guidelines offense level for accepting responsibility and admitting his guilt of the felon-in-possession charge. In doing so, the district court determined that such a reduction would be improper because Hall continued to deny his involvement in the burglary of Bench's barn and the theft of the shotgun. "We review the district court's determination that a defendant has not accepted responsibility for the offense for clear error." *United States v. Kamper*, 748 F.3d 728, 744 (6th Cir.), *cert. denied*, 135 S. Ct. 882 (2014).

The commentary to § 3E1.1 of the Guidelines provides that "a defendant who falsely denies, or frivolously contests, relevant conduct *that the court determines to be true* has acted in a manner inconsistent with acceptance of responsibility." USSG § 3E1.1, comment. (n.1(A)) (emphasis added). Because, as discussed above, the district court did not err in finding, by a preponderance of the evidence, that Hall indeed was involved in the burglary that resulted in the theft of Bench's shotgun and binoculars, Hall's continued denials of his involvement in that

crime means that the district court did not commit clear error in denying the defendant a sentence reduction for acceptance of responsibility.

## Challenge to the Propriety of the Decision to Depart Upward in Sentencing

Even though Hall's advisory Guidelines range called for a prison sentence between 51 and 63 months, the district court departed upward and imposed a 96-month sentence upon the defendant. Hall contends that such a lengthy sentence was substantively unreasonable.

In its initial calculations, the probation office assigned Hall a criminal history category of IV, based upon the defendant's numerous prior criminal convictions. The district court recognized, however, that even criminal history category IV "substantially underrepresent[ed] the seriousness of the defendant's criminal history or the likelihood that . . . the defendant will commit other crimes." According to the district court, a number of Hall's prior convictions no longer were counted in calculating the total number of the defendant's criminal history points due to the age of those earlier crimes. However, those prior crimes were felonies, not "multiple misdemeanors or something of lesser importance than the offenses, which are not being counted here." Moreover, as explained by the district court:

> This defendant has four—count them—four prior convictions for felon in possession of a firearm. Three in state court, and one in the Western District of Michigan Federal Court, for which he received a 96 month sentence, from one of my colleagues last decade. Criminal History Category IV does not adequately score the seriousness of that criminal history.

When "reliable information indicates that the defendant's criminal history category substantially underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." USSG § 4A1.3(a)(1). Here, the district court did determine that criminal history category IV indeed underrepresented the seriousness of Hall's criminal history—if for no reason other than the fact

that some of his prior convictions were not counted simply because they had "aged out" while Hall served other prison sentences. The district court thus departed upward and placed the defendant in criminal history category VI, the criminal history category in which Hall fell during his sentencing for his earlier, 2004 felon-in-possession conviction. As a result, Hall was subject, as a criminal-history-category-VI, level-20 offender, to a prison term of 70 to 87 months. Even then, the district court did not feel that the available range of sentences would provide adequate punishment for Hall. Thus, pursuant to the directives of USSG § 4A1.3(a)(4)(B), the district court "structure[d] the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI . . .," to the 77-to-96-month range appropriate for a criminal-history-category-VI, level-21 offender.

> Having settled on a Guidelines range that it felt was appropriate, the district court stated:
>
> And for protection [of] the public, because this defendant is a serial offender, and he is a serial offender involving weapons, which in the Court's judgment is extremely serious.
>
> And also for purposes of specific deterrence of Mr. Hall, it seems a non-starter to give him a sentence which is lower than the 96 month sentence for purposes of just punishment and for specific deterrence of Mr. Hall, it's a non-starter to give him a sentence less than he received by my colleague approximately ten years ago. So for that reason, for specific deterrence and as well as general deterrence of others who might contemplate similar activity after rolling up the criminal history that Mr. Hall has [rolled] up, a further departure of one level down is appropriate, the resulting advisory guideline range is 77 to 96 months.
>
> Mr. Hall just doesn't get it. He cannot conform his conduct to the requirements of the law. He was on supervised release for a very short period of time and, of course, [a] supervised release . . . violation is a violation of trust, which is separate and apart from further violations of the federal or state criminal law. But the Court gave Mr. Hall an opportunity to perform and measured a certain amount of leniency for Mr. Hall, but for whatever reason Mr. Hall just couldn't stay away from violating the criminal law.
>
> I think just punishment for this offense in light of all of the factors which are attendant to the case calls for a sentence at the upper end of the guideline range as I have found in in this particular case.

Accordingly, it's the judgment of the Court the defendant is committed to the custody of the Bureau of Prisons to be imprisoned for a term of 96 months.

This sentence is not substantively unreasonable. First, there is no question that the 96-month prison term was not selected arbitrarily. Rather, the district court recognized that Hall had been given a 96-month sentence in 2004 for a prior conviction for being a felon in possession of a firearm. It would make little logical sense to impose a more lenient sentence for a subsequent violation of the same federal criminal law simply because the inexorable passage of time rendered some prior convictions too remote to be considered in the Guidelines calculation of the defendant's criminal history category. Given the recidivist tendencies exhibited by Hall, the district court's sentence would not have been arbitrary even if it had been harsher than, rather than merely equal to, the 2004 sentence imposed by another district judge for the same offense.

Second, the district court did not base its sentence on impermissible factors. Instead, the district court considered Hall's criminal history, the seriousness of the offense, the need to deter Hall from future misconduct, the need to dissuade other individuals from similar criminal conduct, and the need to protect the public from further crimes of the defendant. Thus, the court did not fail to consider any of the relevant factors listed in 18 U.S.C. § 3553(a) and did not give undue weight to any of those considerations. The above-Guidelines-range sentence imposed by the district court was, therefore, both justified and reasonable.

The judgment of the district court is AFFIRMED.