NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0175n.06

No. 19-3717

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED**<br>Mar 27, 2020<br>DEBORAH S. HUNT, Clerk |

UNITED STATES OF AMERICA,               )
                                        )
        Plaintiff-Appellee,             )
                                        )   ON APPEAL FROM THE
v.                                      )   UNITED STATES DISTRICT
                                        )   COURT FOR THE
DANTE L. WINNICK,                       )   NORTHERN DISTRICT OF
                                        )   OHIO
        Defendant-Appellant.            )
                                        )

BEFORE:    SUHRHEINRICH, BUSH, and MURPHY, Circuit Judges.

SUHRHEINRICH, Circuit Judge.  In this direct criminal appeal Defendant Dante L. Winnick challenges the procedural and substantive reasonableness of the sentence imposed after he pled guilty to federal escape.  We affirm.

## I.

### A.

On June 22, 2011, Winnick was convicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and subsequently sentenced to 53 months' imprisonment followed by three years of supervised release.  He began serving the term of supervised release on January 13, 2015 but landed back in prison for another 13 months after violating the terms of his release.

On February 14, 2018, the Bureau of Prisons transferred him from FCI Hazleton to Oriana Halfway House to complete the remainder of his custody sentence.  Upon arrival he agreed in

writing to abide by house rules, including one stating that if his whereabouts were unknown for more than six hours, he would be deemed AWOL and charged with escape.

On March 11, 2018, Winnick told his case manager that a loved one had died but did not submit a request to attend the funeral. Instead, he walked out the door and never returned. Apparently, this was a habit—this was Winnick's fifth time escaping from custody.

Winnick committed two serious offenses while on the lam. On September 15, 2018, Winnick viciously attacked a woman with his hands, a cane, and a baseball bat. Cleveland Police interviewed the victim at University Hospital after the attack. She identified Winnick by name.

On November 20, 2018, Winnick robbed a Rite Aid located near his apartment. The Rite Aid employee at the register said that a man with a black ski mask and hoodie called him by name, pointed what looked like a gun in his pocket at him, and told the employee to "give him the money." The next day another witness told police that he had found a ski mask, black hoodie, and knit cap worn by the suspect in a vacant lot down the street from the Rite Aid. The police also viewed video of the robbery. Although his face was covered with a mask, the perpetrator appeared to match Winnick's height and weight. Rite Aid staff told police that they were "convinced Dante from the apartment across the street had committed the robbery." Cleveland police also found a coat containing a cell phone near the crime scene, which turned out to be Winnick's.

On November 26, 2018, Cleveland Police arrested Winnick for obstructing official business after he first refused to identify himself and then provided a fake name to officers investigating the Rite Aid robbery. On March 19, 2019, Winnick was indicted on state charges of aggravated robbery in the first degree with a firearm specification and robbery in the second degree. On March 28, 2019, he was charged in a federal indictment with one count of escape, in violation of 18 U.S.C. § 751(a), relating to his departure from Oriana House in March 2018.

**B.**

Winnick pleaded guilty without a plea agreement, but he argued that he was entitled to a four-point reduction from his base offense level of 13, *see* USSG § 2P1.1(a)(1), under USSG § 2P1.1(b)(3). The government contended that Winnick should not receive the four-point reduction because he committed crimes while away on escape. *See* USSG § 2P1.1(b)(3) (stating that a four level reduction "*shall not* apply if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more.") (emphasis added). Winnick asserted that the assault charge did not qualify because it was "merely a complaint" that never resulted in a conviction.

At this hearing Winnick asked the court if he could "speak freely" and told the district court that he left Oriana Halfway House to attend his son's funeral and that he "went to the funeral and came—I didn't even go to the burial site. I came right back." He explained that "it was a walk-away, because I came right back with the obituary, and the lady told me, 'You can't come back in because you didn't put in a kite,' for me to go to the funeral. But I didn't know my son was going to die." Winnick nonetheless acknowledged that he understood that "leaving was the offense."

At sentencing the district court determined that the four-level reduction did not apply because "the preponderance of the evidence . . . established that Mr. Winnick committed the offenses alleged in paragraphs 10 [the assault report] and 11 [the Rite Aid robbery indictment] [of the presentence report] while on escape status." The court also determined that Winnick was not entitled to a two-level acceptance-of-responsibility reduction because of his "inexact" explanation for his departure from Oriana House and failure to return. As noted, Winnick informed the court at his plea hearing that his son had died on March 8, 2018 and that he was leaving to attend the funeral (and made the same assertion in a written statement to pretrial services). That story turned

out to be false, as Winnick's son died on May 24, 2017, and the funeral was held on June 5, 2017, nine months before Winnick absconded from the halfway house.

With a criminal history category of V and a total offense level of 13, the Guidelines range was 30 to 37 months. The court sentenced Winnick to 30 months' imprisonment, followed by a three-year term of supervised release. In response to the *Bostic* inquiry, Winnick objected to the court's denial of both reductions as well as his request for a downward departure due to diminished capacity.

On appeal Winnick challenges the court's denial of the four-point reduction under USSG § 2P1.1(b)(3) as well as the substantive reasonableness of his sentence.

**II.**

Sentences must be both procedurally and substantively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). We assess reasonableness—both procedural and substantive—under an abuse-of-discretion standard. *Id.* We review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2019).

**A.**

Procedural reasonableness is a "process-driven" requirement. *Id.* A district court commits procedural error if it calculates the Guidelines range improperly, treats the Guidelines as mandatory, fails to consider the 18 U.S.C. § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51. A district court's factual findings must meet a preponderance-of-the-evidence standard. *United States v. Watts*, 519 U.S. 148, 156 (1997) (per curiam); *United States v. Stout*, 599 F.3d 549, 558 (6th Cir. 2010). Proof under that standard is "such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in the mind of the finder of fact belief that

what is sought to be proved is more likely true than not true." *United States v. Hall*, 664 F. App'x 479, 482 (6th Cir. 2016) (cleaned up; citation omitted).

Winnick claims that his sentence is procedurally unreasonable because the Government did not prove by a preponderance of the evidence that he actually "committed" a qualifying offense while he was on escape status. He claims that the police reports from the felonious assault incident and aggravated robbery do not meet the preponderance standard.

As Winnick correctly notes, adequate proof is not restricted to convictions. The Guideline at issue, USSG § 2P1.1(b)(3), uses the word "committed" not "convicted." *See United States v. Charlesworth*, 217 F.3d 1155, 1159–60 (9th Cir. 2000) ("The use of the word 'committed' in § 2P1.1(b)(3) suggests that neither a conviction for a felony nor even an indictment is required."); *United States v. Strachan*, 968 F.2d 1161, 1162–63 (11th Cir. 1992) (holding that a district court "can deny the reduction if a preponderance of the evidence demonstrates that the defendant committed a disqualifying offense, even if there has been no formal conviction"); *United States v. Durham*, 178 F.3d 796, 799 (6th Cir. 1999) (emphasis added) (citation omitted) ("The judge may not . . . apply this reduction if the defendant committed an offense punishable by imprisonment for one year or more during his escape."). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; *see also* USSG 1B1.4. Rather, the test is whether the sentence is based on "reliable information." *United States v. Alsante*, 812 F.3d 544, 548 (6th Cir. 2016) (quoting *United States v. Gatewood*, 230 F.3d 186, 191 (6th Cir. 2000) (en banc)).

The district court did not clearly err in finding, beyond a preponderance of the evidence, that Winnick committed a qualifying offense while on escape status. As the district court noted,

the state grand jury indictment "most strongly supports" the denial of the four-level reduction, when combined with the information in the police report. Witnesses at the scene of the aggravated robbery crime identified Winnick as the culprit, despite his attempts to remain incognito. Discovery of Winnick's cell phone near the scene corroborated the witnesses' account. These detailed, police-gathered facts, which dovetailed each other, made it "more likely true than not true" that Winnick committed aggravated robbery while on escape status. As the district court observed, the aggravated robbery offense, on its own, provided a sufficient basis to deny the four-level reduction.

Finally, as the district court remarked, the assault report "speaks as well to commission of offense conduct even though there hasn't been a conviction." The police field case report stated that Cleveland Police were called to the scene "in connection with a female who was assaulted with a gun." The victim identified Winnick by name. She also shared the details of the assault with police.

Winnick argues that the preponderance standard as to either alleged offense was not met because "[n]o witnesses presented evidence; the government relied only on police reports; there was not even any signed witness statements; there were no alleged admissions by Winnick to police." Winnick provides no authority that such evidence is necessary for a preponderance finding and that police reports and indictments are not sufficient. Other courts have denied USSG § 2P1.1(b)(3) reductions based on evidence like that presented in this case. In *Strachan*, the court concluded there was ample evidence to support the district court's finding that the defendant had committed an offense while on escape status based on the government's proffer of an indictment of a federal crime and "also testimony" from two police officers. *See Strachan*, 968 F.2d at 1163. In *Charlesworth*, the court held that a presentence report that detailed two incidents of the further

felony activity by the defendant while on escape status established by a preponderance of the evidence that the defendant was not entitled to a four-level reduction. (It also did not matter that the evidence was hearsay. 217 F.3d 1155, 1160 (9th Cir. 2000) Similarly, in *United States v. Waldron*, the court held that the district court did not err in concluding that the defendant committed a felony while on escape based on pending state felony charges as detailed in the presentence report. 458 F. App'x 190, 191 (3rd Cir. 2012) *Cf. United States v. Hatcher*, 947 F.3d 383, 395-96 (6th Cir. 2020) (finding procedural unreasonableness where the district court relied on unsworn testimony of a special agent that shell casings from a shooting matched a firearm discovered on the defendant three days later and the government did not allege but merely stated that it was a "possibility" that the defendant was involved in the shooting; discussing similar cases where the district court relied on "similarly threadbare evidence to connect a defendant to other criminal conduct" at sentencing).

In sum, the sentence imposed was procedurally reasonable.

**B.**

Substantive unreasonableness asks whether "the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *Rayyan*, 885 F.3d at 442. Winnick asserts that "[t]he 30-month sentence . . . is disproportionate to the seriousness of *this offense* and *this offender*," and thus greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a). Specifically, he claims that the district court placed too much emphasis on his criminal history to the detriment of three other relevant factors: (1) his severe mental illness, (2) his intense grief over his son's death on the day he walked off, and (3) three points in his criminal history that were for an old offense committed when Winnick was seventeen years old.

The district court appropriately exercised its discretion. As the district court observed, this was "not the first . . . not the second . . . not the third . . . [o]r the fourth. It [was] the fifth [escape]." And, as the PSR reveals, Winnick has a long history of criminal activity, spanning twenty-five years. *See United States v. Webb*, 403 F.3d 373, 384 (6th Cir. 2005) ("Given [the defendant's] prior convictions and his parole status, it was reasonable for the district court to place substantial weight on [the defendant's] criminal history."). Notwithstanding, the district court imposed a sentence at the very bottom of the Guidelines range. The district court also determined that while Winnick was not a candidate for a departure or variance based on mental health issues it recommended to the Bureau of Prisons that Winnick "receive a mental health evaluation and be designated to a facility that can provide mental health treatment" to him. In short, the court balanced Winnick's mental health against other relevant factors, including the fact that this was Winnick's fifth escape.

If anything, we think that the district court was lenient under the circumstances and therefore the sentence imposed is substantively reasonable. *See United States v. Moon*, 808 F.3d 1085, 1090 (6th Cir. 2015) (citation and internal quotation marks omitted) ("A sentence is substantively reasonable if it is proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a).").

**III.**

Because we conclude that Winnick's sentence is procedurally and substantively reasonable, we **AFFIRM** the judgment of the district court.